IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PIERRE JORDAN, #M07905, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 17-cv-00466-MJR ) |
| C/O CACIOPPO, JACQUELINE LASHBROOK, SEAN FURLOW, and LT. HECK, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**REAGAN, Chief District Judge:**

Plaintiff Pierre Jordan, an inmate who is currently incarcerated at Lawrence Correctional Center (Lawrence), brings this action pursuant to 42 U.S.C. § 1983 for constitutional deprivations that allegedly occurred at Pinckneyville Correctional Center (Pinckneyville). The instant case was severed from *Jordan v. Wagner*, No. 17-cv-00209-MJR (S.D. Ill.) (original case), pursuant to a Memorandum and Severance Order dated May 4, 2017. (Doc. 1, instant case). This severed case focuses on two claims: (1) **Count 7** - a Fourteenth Amendment claim against Officer Cacioppo and Warden Lashbrook for depriving Plaintiff of a protected liberty interest without due process in connection with a disciplinary ticket he received on March 4, 2015; and (2) **Count 8** - a claim against Lieutenants Furlow and Heck/Hock[1] for failing to investigate Plaintiff's claims of threats to his safety and ignoring his requests for a prison

---

[1] The Complaint refers to "Lt. Heck" and "Lt. Hock." The case caption identifies Lt. Heck as a defendant. (Doc. 2, p. 1). The body of the Complaint refers to Lt. Hock. (Doc. 2, pp. 1-2). Both are identified as the "Adjustment Committee Chairperson" and therefore appear to be the same person. *Id.*

1

transfer. (Doc. 1, p. 7). Plaintiff seeks monetary damages. (Doc. 2, p. 16). He also seeks an investigation into his allegations of staff misconduct. *Id*.

Both claims are now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening –** The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal –** On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

During his incarceration at Pinckneyville, Plaintiff alleges that he received a false disciplinary ticket for sexual misconduct on March 4, 2015. (Doc. 2, p. 12; Doc. 2-1, pp. 20-22; Doc. 2-2, p. 19). Officer Cacioppo issued the ticket. *Id*. Plaintiff was found guilty at an Adjustment Committee hearing on March 8, 2015. (Doc. 2, p. 12; Doc. 2-1, pp. 20-22; Doc. 2-2, pp. 19-23). He maintains that the hearing was procedurally flawed because Lieutenant McBride

(Adjustment Committee Chairperson) refused to call any of Plaintiff's requested witnesses. *Id*. He was punished with three months of segregation and demotion to C-grade status. *Id*. On appeal, Warden Lashbrook allegedly allowed the punishment to stand. (Doc. 2, p. 12).

While in disciplinary segregation, Plaintiff began receiving threats of bodily harm that stemmed from his ticket. (Doc. 2, p. 12). Inmates and officers, alike, threatened to "kill" Plaintiff or "fuck [him] up" for his "disrespect" of an officer. *Id*. Inmates in the general prison population warned Plaintiff that he would be killed once he was released from segregation. *Id*.

Fearing for his safety, Plaintiff requested a prison transfer. (Doc. 2, pp. 12-13). He first made this request to Officer Lund[2] during an interview on March 25, 2015. (Doc. 2, p. 13). He repeated his request for a prison transfer to Mental Health Professional McElvain (MHP McElvain) the following day. (Doc. 2, p. 13; Doc. 2-2, p. 30). He expressed the same concerns and again requested a prison transfer during an interview with Lieutenant Furlow. (Doc. 2, p. 13). The lieutenant said that he could not help Plaintiff because he had not accumulated a sufficient number of "keep separate orders." *Id*. Lieutenant Furlow mentioned that a transfer would be considered after Plaintiff refused housing three times. *Id*. On March 27, 2015, Plaintiff also reported his safety concerns to Warden Spiller, who instructed him to submit them in writing. *Id*. Plaintiff followed the warden's instructions but received no response. *Id*.

Plaintiff refused housing assignments six times in less than four months, citing his safety concerns. (Doc. 2, pp. 13-14; Doc. 2-3, pp. 1-7). He incurred more disciplinary tickets as a result. (Doc. 2, p. 13; Doc. 2-3, pp. 1-7). After his third refusal, Lieutenant Furlow promised to transfer Plaintiff to another prison but never did so. (Doc. 2, p. 14).

---

[2] Officer Lund, MHP McElvain, Warden Spiller and Lieutenant McBride are mentioned in the statement of claim and herein but are not named as defendants in the Complaint. Any claims against these individuals shall therefore be considered dismissed without prejudice.

At his disciplinary hearings, Plaintiff admitted that he refused housing, but he informed Lieutenant Heck/Hock that he only did so because he feared for his safety. (Doc. 2, p. 14). He requested an investigation into the threats. *Id.* Lieutenant Heck/Hock ignored the request and found him guilty of the rule violations. *Id.* Plaintiff received 17 months of C-grade, served 192 days in segregation, and lost 5 months of good conduct credit.[3] (Doc. 2, p. 14; Doc. 2-1, p. 22). He was not transferred to Lawrence until September 9, 2015, when he received a disciplinary transfer from Pinckneyville. (Doc. 2-3, p. 19).

## Discussion

In the Memorandum and Severance Order (Doc. 1, instant case), this Court characterized the two severed claims as follows:

**Count 7** - Fourteenth Amendment claim for deprivation of a liberty interest without due process against Officer Cacioppo for writing a false disciplinary report on March 4, 2015, and against Warden Lashbrook for allowing Plaintiff to be punished with three months in segregation after he was found guilty of the false charge.

**Count 8 -** Claim against Furlow for failing to transfer Plaintiff for his protection and against Lieutenant Heck/Hock for failing to investigate Plaintiff's claims of threats to his safety.

(Doc. 1, p. 7). The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding the merits.

---

[3] The disciplinary tickets that resulted in Plaintiff's loss of good conduct credit are not at issue in this case. Plaintiff cannot bring a claim for monetary relief based on an allegedly unconstitutional disciplinary action that includes the loss of good conduct credit until the disciplinary "conviction" is overturned or expunged. *See Heck v. Humphrey*, 512 U.S. 477, 480-81, 486-87 (1994). *See also Edwards v. Balisok*, 520 U.S. 641, 649 (1997) (*Heck* bar means that a plaintiff has no claim to pursue if the punishment imposed remains in force); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008); *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011). Plaintiff does not allege that any of these tickets were overturned or expunged.

## Count 7

The Complaint articulates no Fourteenth Amendment claim against Officer Cacioppo for issuing Plaintiff a false disciplinary ticket or against Warden Lashbrook for allowing his punishment to stand. Allegations of false disciplinary reports do not state a claim where due process is afforded. *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994) aff'd, 70 F.3d 117 (7th Cir. 1995) (citing *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984)). Due process safeguards associated with prison disciplinary proceedings guard against potential abuses. *Hawkins v. O'Leary*, 729 F. Supp. 600, 602 (N.D. Ill. 1990), relying on *Hanrahan*, supra, 747 F.2d at 1141. A hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for an allegedly false disciplinary report because the procedural requirements of a disciplinary hearing protect prisoners from arbitrary actions of prison officials. *Id.*; *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987).

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty-four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Plaintiff points to a single procedural defect in his disciplinary proceedings for the sexual misconduct ticket, *i.e.*, Lieutenant McBride would not allow him to call witnesses. The problem with this claim is that Plaintiff failed to name Lieutenant McBride or any other member of the Adjustment Committee as a defendant. When parties are not listed in the caption, this Court

does not treat them as defendants.  Therefore, any claims against them would be considered dismissed without prejudice.  *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

Instead, Plaintiff names Warden Lashbrook for allegedly allowing the punishment "to stand."  (Doc. 2, p. 12).  Warden Spiller, not Warden Lashbrook, reviewed and approved the decision, and Plaintiff also failed to name Warden Spiller as a defendant.  (Doc. 2-2, pp. 19-20). Even if he had named Lieutenant McBride and Warden Spiller, the Complaint would still support no claim.

When a plaintiff brings this type of claim, he must first show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Absent a protected interest, no due process protections attach.  A protected liberty interest arises when placement in segregation "imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life."  *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  Courts generally consider two factors when making this determination: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original)).  In other words, Fourteenth Amendment due process protections are only triggered when the duration of confinement is sufficiently long and the conditions in segregation are particularly harsh.

Plaintiff remained in segregation for three months and offers no indication that he endured harsh conditions there.  Rather, Plaintiff makes it clear that segregation was preferable

to housing in the general population where he feared more for his safety. The allegations simply support no finding that a protected liberty interest was at stake. Absent a liberty interest, no due process protections were triggered in the first place. Count 7 shall be dismissed with prejudice against Officer Cacioppo and Warden Lashbrook for failure to state a claim upon which relief may be granted.

**Count 8**

Plaintiff's claims against Lieutenants Furlow and Heck/Hock shall receive further review. His claims arise under the Eighth Amendment, which protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII. Prison officials have a duty to protect inmates from violence at the hands of other prisoners, and the failure to do so may give rise to liability under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). To articulate a claim against a prison official in this context, a plaintiff must allege that (1) the denial of his request for protective custody (here, a prison transfer) posed a substantial risk of serious harm to the plaintiff; and (2) the prison official acted with deliberate indifference to that risk. *Hoban v. Godinez*, 502 F. App'x 574, 578 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008)).

Deliberate indifference is shown when a prison official is aware of a specific, impending, and substantial threat to the plaintiff's safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). Exposing a prisoner to a "heightened risk of future injury" is "itself actionable" when done with deliberate indifference. *Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014) ("Even without an actual injury, the mere probability of the harm to which [an inmate is exposed] can be

7

sufficient to create liability."); *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013); *Thomas v. Illinois*, 697 F.3d 612, 614-16 (7th Cir. 2012) ("hazard, or probabilistic harm" could allow recovery).

The allegations support a claim against both defendants. Plaintiff allegedly complained about his safety concerns, including death threats he received from inmates and staff, to Lieutenants Furlow and Heck/Hock. According to the Complaint, they essentially ignored his concerns, including his request for an investigation and a prison transfer. Given these allegations, the Court finds that further review of Count 8 is warranted against these defendants.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is **DISMISSED** with prejudice against Defendants **CACIOPPO** and **LASHBROOK** for failure to state a claim upon which relief may be granted. The Clerk is directed to **TERMINATE** both **CACIOPPO** and **LASHBROOK** as defendants in CM/ECF.

**IT IS ORDERED** that **COUNT 2** is subject to further review against Defendants **FURLOW** and **HECK/HOCK**. With regard to **COUNT 2**, the Clerk shall prepare for Defendants **FURLOW** and **HECK/HOCK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Memorandum and Severance Order (Doc. 1), Complaint (Doc. 2), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of

Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint (Doc. 1) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.

Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 5, 2017**

<u>s/ Michael J. Reagan</u>
**Chief Judge**
**United States District Court**